MARY C. FAWCETT et al., complainants,

*v.*

COOPER HOSPITAL, defendant-counter-claimant-appellee, and
CAMDEN TRUST COMPANY, &c., et al., defendant-appel-
lant.

[Decided January 9th, 1942.]

On appeal from an order of the Court of Chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"Appeal having been taken from the order entered in the above cause July 25th, 1941, denying the motion of defendant Camden Trust Co. to strike certain interrogatories propounded by counter-claimant Cooper Hospital,—this memorandum is filed setting forth the reasons for the making of the said order.

"Camden Safe Deposit & Trust Co.,—now, by subsequent reorganization and change of name, the defendant Camden Trust Co.,—was appointed executor and also trustee under the will of Joshua E. Borton, deceased, who died March 15th, 1929. By the will the decedent gave his residuary estate to the trustee in trust to pay the income to his widow for life and thereafter to pay one-sixth of the income to each of the present complainants for their respective lives, and one-third, each, to defendant Cooper Hospital and Burlington County Hospital forever,—with remainder to the said hospitals after the deaths of the life tenants.

"At testator's death he owned 339 shares of Security Trust Co. stock, and 588 shares of Camden Safe Deposit & Trust Co. stock. Some three months after his death a merger of Security Trust Co. with Camden Safe Deposit & Trust Co. (the executor and trustee)' was effectuated. The executor and trustee voted both these blocks of stock in favor of the merger. Thereafter the executor exchanged the 339 shares of Security Trust Co. for 1,356 shares of the new (merged) Camden Safe Deposit & Trust Co. stock, and also exchanged the 588 shares of (old) Camden Safe Deposit & Trust Co. stock for 588 shares of the new (merged) stock. Thereafter the defendant trustee took over these blocks of stock of the merged company, from itself as executor, and subsequently continued to hold them as such trustee.

"The defendant Trust Co. filed its first intermediate account as trustee, in the Burlington Orphans Court, on or about December 28th, 1936. Subsequently this court took over jurisdiction of the administration and accounting.

Exceptions were filed to the account and issues thereby raised which have not as yet been brought on to hearing.

"The bill of complaint, filed by the life tenants, sets up the foregoing circumstances, charges that the conduct of the defendant executor and trustee in regard thereto was in breach of its fiduciary duty and prays that said defendant be surcharged with loss resulting therefrom. Defendant Cooper Hospital filed answer admitting the allegations of the bill and also filed a counter-claim, repeating the allegations of the bill and seeking similar relief in its own behalf. Both bill and counter-claim pray discovery, and have attached numerous interrogatories. To the counter-claim of Cooper Hospital are attached some twelve interrogatories, (designated by the letters 'a' to 'l'), which are not attached to the bill of complaint. The defendant Trust Co. moved to strike these twelve interrogatories from the counter-claim.

"Those interrogatories are as follows:

" 'a. At or prior to the filing of first intermediate account by you as trustee, had Camden Safe Deposit & Trust Company issued any preferred stock?

" 'b. When was such preferred stock issued?

" 'c. What amount in par value or number of shares of no par value of preferred stock was issued?

" 'd. What amount was outstanding at the time of the filing of the trustee's account referred to?

" 'e. What were the terms of said preferred stock as to its voting power, dividend rate, whether cumulative or non-cumulative, participation in earnings, redemption and retirement features?

" 'f. What was the consideration received by Camden Safe Deposit & Trust Company on the issuance of such preferred stock per share?

" 'g. Did Camden Safe Deposit & Trust Company at the time of the death of Joshua E. Borton and at any time thereafter until the filing of said trustee's account hold any stock of Camden Safe Deposit & Trust Company in any other trust accounts than that of the Borton Estate, and if so, how many shares?

" 'h. Did Camden Safe Deposit & Trust Company at the

time of the death of Joshua E. Borton and at any time thereafter until the filing of said trustee's account hold any stock of Security Trust Company in any other trust accounts than that of the Borton Estate, and if so, how many shares?

" 'i. Was the stock of Camden Safe Deposit & Trust Company and stock of Security Trust Company so held in other trust accounts voted in favor of the merger of said banks?

" 'j. State the number of shares of stock of Camden Safe Deposit & Trust Company held by the respective officers and directors of the Camden Safe Deposit and Trust Company from the date of death of Joshua E. Borton until the date of filing of said trustee's account referred to, giving the changes in stockholdings during that period.

" 'k. In addition to the exchanges of stocks or other securities specifically mentioned or referred to in the bill of complaint in this cause and in the exceptions filed to the trustee's accounting, was there any other exchange of stocks or other securities resulting from corporate mergers, reorganizations, changes of par value or otherwise?

" 'l. If there were any other such exchanges, state what stocks or securities were involved and what was received in exchange therefor.'

"The ground assigned for the motion to strike interrogatories 'a' to 'f' inclusive, is that these interrogatories relate to circumstances existing at the time of the filing of the trustee's first intermediate account aforesaid, which was some seven years after the merger and exchanges of stock aforesaid, and that such inquiries should be limited to the circumstances existing at the time of the exchanges on June 26th, 1929.

"This contention is unsound. The counter-claim challenges not only the conduct of the executor and trustee in making the exchanges and taking in the new stock; it also challenges the propriety of the conduct of the trustee in continuing to hold that stock thereafter. It calls upon the defendant trustee to account for the entire period of the trust, and of course the litigation will necessarily involve the correctness, accuracy and sufficiency of the account which that trustee has heretofore filed in the Orphans Court but which has not as yet been judicially passed upon.

"Interrogatories 'g' to 'j' inclusive, the defendant contends are immaterial,—saying that it is of no concern to the counter-claimant beneficiary of the trust whether or not the defendant trustee held any stock of Camden Safe Deposit & Trust Co., or Security Trust Co. as trustee in any other trust estates than the Borton estate, between the time of Borton's death and the filing of its said account, or, if so, whether such stock was voted in favor of the merger aforesaid, or whether the defendant trustee's officers and directors held stock of Camden Safe Deposit & Trust Co. during the said period.

"Not so. The counter-claim challenges the propriety of the defendant trustee in voting the Borton estate stock in favor of the merger, and in taking in the new stock, and in continuing to hold the new stock up to and at the time of the filing of the said account. Obviously, whether or not the defendant trustee acted with respect to similar stock held by it in other trust estates similarly to the way it did with respect to the stock held by it in this estate may well be relevant and material in passing upon questions of the good faith and honest exercise of judgment by the trustee in regard to the Borton estate. Also the question of whether the officers and directors of the defendant trustee held stock of the defendant trustee is relevant and material to the question as to whether they were acting in their own interest or in the interest of the beneficiaries of this trust, in their actions in regard to voting for the merger, voting to take in the new stock, and voting to continue to hold such stock.

"Interrogatories 'k' and 'l' are said, by the defendant trustee, to be 'immaterial and improper,' without stating any ground other than that 'the first intermediate account of the said trustee speaks for iself.'

"These interrogatories are not 'immaterial or improper.' The beneficiary has a right to know whether any other exchanges were made by the trustee, and if so, what they were,—has a right to full and complete information from its trustee as to the conduct and administration of the trust. It is not made to appear that in and by the first intermediate account of the trustee, or anything appended thereto, there is any statement under oath that no exchanges were made other

than those set forth in the account or the accompanying schedules."

*Mr. Walter R. Carroll,* for the complainants.

*Messrs. Curry & Purnell,* for the defendant.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion filed in the Court of Chancery by Vice-Chancellor Buchanan.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.